493 So.2d 109 (1986)
MAJOR TRANSPORTS, LTD., et al.
v.
Chester COURVILLE, et al.
No. 85-265.
Court of Appeal of Louisiana, Third Circuit.
June 2, 1986.
Rehearing Denied September 17, 1986.
Miller & Miller, Michael Miller, Crowley, for defendants-appellants.
Voorhies & Labbe, James Lambert, Lafayette, William Tabb, III, New Orleans, Roy & Hattan, L. Lane Roy, Lafayette, for defendants-appellees.
Before CHEHARDY, BOWES and GAUDIN, JJ. Pro Tem.
LAWRENCE A. CHEHARDY, Judge Pro Tem.
The only issue before us on this appeal is whether the defendant/third-party plaintiff, Chester Courville, was in the course and scope of his employment when he was severely injured in a head-on collision with an eighteen-wheel tractor trailer truck. Courville apparently fell asleep at the wheel of his automobile while he was traveling home from his job on a land-based drilling rig. (The parties have stipulated that the accident was Courville's fault.)
Courville was sued by Major Transports, Ltd., the owner of the truck, to recoup the damage to the truck. Courville in turn filed a third-party demand against his employer, Goldrus Drilling Company, seeking not only worker's compensation benefits but also tort damages. His tort and compensation claims were severed. At trial of the compensation claim the trial judge concluded Courville was not in the course and scope of his employment and dismissed the compensation claim. Courville appealed.
The crucial factual determination in this case is whether a per diem allowance Courville received in addition to his regular pay was given to him as a travel expense or for other purposes.
An employee seeking worker's compensation benefits must prove by a preponderance of the evidence that an accident occurred within the course and scope of his employment. Clinton v. American Mut. Liability Ins. Co., 422 So.2d 570 (La.App. 3 Cir.1982). For purposes of worker's compensation, an employee generally is not considered to be in the course and scope of his employment while he is traveling to and from work. Stephens v. Justiss-Mears Oil Co., 312 So.2d 293 (La.1975).
An exception to this rule is recognized when transportation is furnished as an incident of employment, either through a vehicle, *110 a conveyance and a driver, or payment of expenses. Michaleski v. Western Preferred Cas. Co., 472 So.2d 18 (La.1985). However,
"[M]ere payment of travel expenses, without an express or implied agreement to furnish transportation, does not place the employee within the course of his employment while going to and returning from work when such payments bear no relation to actual travel expenses and are intended only as an inducement to persuade persons to work at a particular job site. * * *" Gardner v. Industrial Indemnity Company, 212 So.2d 452, 456 (La.App. 1 Cir.1968).
The district court rendered lengthy and well-written reasons for judgment, portions of which we quote with approval:
"The parties agree that during the time Mr. Courville was employed by Goldrus he was paid a per diem allowance in addition to his hourly wages. According to company documents, Goldrus paid its employees a per diem allowance ranging from $20.00 to $25.00 depending on the employee's position. However, the evidence at trial indicated that on some occasions while working for Goldrus, Mr. Courville received an allowance of up to $10.00 more than was designated by the company policy.
"According to the Goldrus employee's manual, the regular allowance was intended to cover its employees' extra expenses for protective equipment. Mr. Roger Stutz, an administrative manager for Goldrus, and Mr. William Brannon, former president of Goldrus, testified that the information in the employee's manual was a correct statement of the company's policy concerning the purpose of the employee's per diem allowance. These men also testified that all Goldrus employees were paid the per diem allowance regardless of whether or not they traveled to and from work and that the allowance was not based upon mileage actually traveled by the employees. Employees received the same amount whether or not they owned an automobile, and they were not required to verify that they expended any money for transportation.
"Furthermore, the page from the Goldrus `drillers handbook' that was introduced at trial expressly indicated that the per diem allowance did not pay for expenses incurred for travel between the employee's home and work site. Mr. Brannon, who was personally involved in making policy decisions at Goldrus, further testified that the original purpose of the per diem allowance was to keep the company competitive with other similar companies in attracting qualified employees. The testimony at trial also showed that Goldrus has discontinued paying a per diem allowance because there is no longer a shortage of manpower in the industry.
* * * * * *
"The Court finds that evidence in this case clearly shows that Goldrus did not agree to pay its employees for their travel expenses. This finding is supported by the evidence as outlined above and by similar cases where a flat rate per diem was involved. [Citations omitted.]
"Plaintiff contends that the fact that he was at times paid an amount higher than the published per diem allowance shows that the payment was intended to cover his travel expenses. In particular, plaintiff cites an instance where Goldrus employees working on a particular oil rig received $10.00 more than the normal allowance after the rig was moved to a location that was further from the city where most of the employees working on the rig lived. However, Mr. Brannon testified that he approved this additional allowance to cover the employees' lodging expenses because the rig in question, unlike most of the company's rigs, was not equipped with sleeping quarters.
"A change in the amount of expense allowance paid to employees may indicate that an employer has undertaken to pay its employees' travel expenses. However, in this case, in light of the explanation offered on behalf of Goldrus, the *111 Court finds that plaintiff has failed to prove that the increased allowance was in fact intended to cover the employee's travel expense. Plaintiff has failed to show that on any occasion when Goldrus paid an additional allowance that the increase was related [to] the distance its employees had to travel to and from their jobsite or to an increase in their travel expenses.
"Plaintiff further contends that at the time he and other employees were hired by Goldrus, they were informed that the per diem allowance was paid to cover their transportation to and from work. Plaintiff alleges that this information came from the Goldrus driller who was responsible for hiring people to fill various job positions on each oil rig.
"The statements allegedly made by the company's drillers, who were agents for Goldrus, could form the basis of an agreement by the company to pay travel expenses as an incident to the employment agreement. However, the evidence presented at trial indicates that these statements were contrary to the company's policies and outside the scope of these agents' actual authority to bind the company.
"Furthermore, there is no basis to find that plaintiff believed that the drillers had the apparent authority to undertake such an agreement on behalf of Goldrus. Apparent authority has two requirements: (1) the principal must make some form of manifestation to an innocent third party; and (2) the third party must rely reasonably on the purported authority of the agent as a result of the principal's manifestations. [Citation omitted.] The only manifestation attributable to Goldrus was that it gave its drillers actual authority to hire and dismiss its employees. The Court finds that granting actual authority to an agent to hire and dismiss employees does not alone create apparent authority on the part of the agent to enter into agreements concerning the conditions of the employment. * * *
"The Court finds that the plaintiff understood that it was the duty of the driller to merely explain the benefits provided by the company, not to enter into agreements concerning those benefits. The fact that the driller may have misstated the purpose of those benefits will not obligate the company to comply with the misstatements when it is apparent that the employee knew that the driller was not responsible for establishing company policy concerning conditions of employment. Although there is no evidence that the plaintiff did rely on the statements made by the Goldrus driller, his reliance would have been unreasonable considering the fact that at the time he was hired he was given an employee's manual which indicated that the statements made by the driller were contrary to company policy.
"The Court finds that plaintiff has failed to prove that Goldrus entered into an agreement to furnish him with transportation to and from work or to pay a sum of money in lieu thereof. Because plaintiff's injuries were sustained while he was traveling home from work, the accident in question occurred outside the course and scope of his employment with Goldrus Drilling Company. Therefore, plaintiff's petition for Worker's Compensation Benefits is denied at his cost."
The reviewing court must give great weight to the factual conclusions of the trier of fact; its reasonable evaluations of credibility and reasonable inferences of fact should not be disturbed although the appellate court may feel that its own evaluations and inferences are as reasonable. Clinton v. American Mut. Liability Ins. Co., supra.
Courville asserts that the factual conclusions of the trial court were not reasonable because of numerous alleged errors in the admission of evidence. He argues that many of the court's factual findings were based on inadmissible evidence (such as hearsay) or were made without evidence to support such findings.
*112 We have reviewed but need not detail here all the errors asserted by Courville. Most of them relate to evidence presented by Goldrus over Courville's objection. Although some of the evidentiary rulings by the court were erroneous, we are not convinced that rulings in Courville's favor would have made any significant difference in his case.
Courville complained that the drillers, when hiring workers for their rigs, sometimes told the workers the per diem allowance was a travel allowance, and that this should be considered binding on the company. We believe the salient point here is that Courville made no showing that he relied to his detriment upon such statements. We infer from the evidence, as the trial judge obviously did, that Courville was more interested in the amount of extra money he could receive than in the purpose the company intended it for.
The fact remains that Courville did not carry his burden of proving, by a preponderance of the evidence, that the per diem allowance was intended for travel expenses. We agree particularly with the trial judge's conclusion that the per diem allowance was intended as an inducement to attract qualified employees. We are impressed that the amount of the per diem varied not according to the mileage traveled by the individual employees, but rather according to their job positions.
Accordingly, we find no manifest error in the district court's conclusion that the per diem allowance was not intended as a travel allowance and therefore that plaintiff was not within the course and scope of his employment when he was injured.
For the foregoing reasons, the judgment of the district court is affirmed.
AFFIRMED.